ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEPHEN A. CAZARES (SBN 201864)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0707
    Facsimile: (213) 894-6269
    Email: Steve.Cazares@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 09-00084-DDP |
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING POSITION; EXHIBITS |
| v. | |
| WESTER SHADRIC COOLEY, | Sentencing Date: 2/27/12 |
| Defendant. | Sentencing Time: 2:30 p.m. |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby files the Government's Objections to the Presentence Report and Sentencing Position. The Government's Objections to the Presentence Report and Sentencing Position is based on the attached memorandum of points and

//
//
//
//
//

1 authorities, the plea agreement in this case, the Presentence
2 Investigation Report, and the records and files in this case.
3 DATED: January 31, 2012          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

/s/ Stephen A. Cazares
STEPHEN A. CAZARES
Assistant United States Attorney
Major Frauds Section

Attorneys for Plaintiff
United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On January 29, 2009, defendant Wester Shadric Cooley ("Cooley") was charged with six counts of concealment money laundering (18 U.S.C. 1956(a)(1)(B)), and one count of subscribing to a false tax return (26 U.S.C. § 7206(1)). All charges deriveD from defendant's participation in a multi-million investment fraud scheme that caused at least $3 million in losses to investors, and defendant's efforts to abscond with over $1 million of victim funds as the scheme was crumbling in May 2002.

On November 7, 2011, defendant pleaded guilty to subscribing to a false tax return for tax year 2002 as charged in Count Seven of the indictment. The guilty plea was pursuant to a written plea agreement. Defendant is out of custody and sentencing is scheduled for February 27, 2012.

The government has no objections to the facts and calculations set forth in the Presentence Investigation Report ("PSR"). For the reasons described more fully below, however, the government respectfully disagrees and objects to the sentence of probation recommended in this case, as such a sentence would undermine the objectives of sentencing set forth at 18 U.S.C. § 3553 and reward defendant's malingering and, in some instances, obstructive conduct in the investigation and litigation of this case. Rather, the government submits that a sentence of 12 months in custody better serves the objections of sentencing, while at the same time takes into consideration the sentencing mitigation factors identified in the PSR.

II. FACTS

    A.    The Stipulated Statement of Facts

The parties agreed and stipulated to the following statement of facts set forth in paragraph 10 of the plea agreement:

    1.    Defendant was an officer and/or director of Bidbay.com, Inc., later known as Auctiondiner.com ("Bidbay"), located in Tujunga, California. The business of Bidbay included an Internet-based auction website.

    2.    In or about February 2002, defendant became an officer and/or director of AskGT.com, also located in Tujunga, California. AskGT.com was an Internet search engine that sold advertising.

    3.    Defendant was also an officer and/or director of Rose Laboratories, an Oregon corporation in the business of selling vitamin and mineral supplements.

    4.    In the time period February 2002 through June 2002, defendant participated in the sale of investments in AskGT.com and Rose Laboratories to investors nationwide primarily though telemarketing cold calls by a co-schemer named De Elroy Beeler ("Beeler"). In the telephone calls with investors, Beeler typically made the following material misrepresentations:

        (a)    that AskGT.com and Rose Laboratories were "going public" soon in an initial public offering ("IPO") on the NASDAQ stock market; and

        (b)    that AskGT.com and Bidbay were being acquired by eBay, Inc.

5. Victims who invested in AskGT and/or Rose Laboratories in response to Beeler's solicitations typically sent a check or wire transfer of money to bank accounts controlled by defendant at Washington Mutual Bank or Bank of the Cascades.

6. Once victim money was received in the AskGT.com or Rose Laboratory bank accounts, defendant typically paid Beeler a commission of 50% of the money received from investors. This 50% commission was not disclosed to investors.

7. In February 2002 through June 2002, defendant caused the transfer of approximately $1.1 million of investor money from the AskGT.com and Rose Laboratory bank accounts to personal bank accounts over which defendant had signatory authority.

8. In or about June 2002, defendant caused the transfer of approximately $620,000 of the money he received from the AskGT.com and Rose Laboratory accounts to an account at Preferred Bank in the name of Bridges LLC. Defendant later received back tens of thousands of dollars from the Bridges LLC account at Preferred Bank for defendant's personal use and benefit.

9. On or about October 14, 2003, in Riverside County, California, defendant signed under penalty of perjury and filed with the Internal Revenue Service a United States Individual Income Tax Return, Form 1040, for the calendar year 2002, in which defendant willfully failed to disclose approximately $494,000 in income transferred from the AskGT.com and Rose Laboratory bank accounts to his personal bank accounts that

increased his taxable income above the $36,518 defendant reported in the Form 1040 filed with the Internal Revenue Service.

  B. <u>Evidence of Defendant's Obstructive Conduct</u>

  In addition to his admitted role in defrauding investors out of millions of dollars, laundering the money to conceal it from the victimS and creditors, and lying to the IRS in his 2002 tax returns, defendant engaged in a campaign of obstructive conduct designed to further his quest for more victim investors, undermine victim efforts to recover their money taken by defendant, and run out the clock on any criminal charges and judgment as follows:

    1. <u>April 15, 2002, Letter to Judge Rea</u>:

  On May 14, 1999, co-schemer Beeler was charged in an indictment filed in the United States District Court, Central District of California, with nine counts of making false statements to a financial institution in violation of Title 18, United States Code, Section 1014, case number CR 99-489. On April 5, 2000, defendant BEELER was convicted by a jury on all counts, but remained free on bond pending his sentencing on June 3, 2002. In that time period, Beeler raised millions of dollars as a telemarketer selling investments for defendant and co-schemer George Tannous in this case.

  On April 15, 2002, defendant wrote a letter to William J. Rea, United States District Judge, on Beeler's behalf. (Exh. 1, Cooley Letter). In the letter, defendant touted his background a as a former United States Congressman and Oregon state legislator, declared Beeler to be an "honest, diligent and

dedicated" employee trusted by "clients." At the time defendant wrote the letter, as defendant has since admitted, defendant was using Beeler to defraud investors, the very "clients" referenced in the letter to Judge Rea. The "service and support" Beeler provided and for which defendant pleaded with the Court to permit to continue was the very criminal fund raising defendant has now admitted.

      2.    <u>Defendant Exaggerated Memory Loss in Victim Federal Lawsuit</u>

In May 2002, investor victim K.R. and others sued defendant and co-schemers Tannous and Beeler for money damages in United States District Court, Eastern District of Missouri, No. CV 02-733-HEA. Defendant was deposed on June 24, 2004, and testified in the trial on January 31, 2005. (Exh. 2, Excerpt of Trial Transcript, 1/31/05).

In both his deposition and trial testimony, defendant displayed exaggerated memory loss similar to that reported by Dr. Jeffrey Bounds and the staff at FMC Butner in this case. For example, in his deposition, defendant feigned a lack of understanding of the proceedings, location, and parties to the litigation. (<u>Id.</u>). In his January 31, 2005, trial testimony, while displaying better functioning that in the prior deposition, defendant still claimed lack of memory of any of the events underlying the lawsuit. (<u>Id.</u>). In fact, on the day of his deposition, defendant is reported to have approached co-schemer Tannous outside of the courtroom and used an expletive in describing the likely result of the trial as to Tannous and clearly displaying an understanding of the facts and

circumstances underlying the lawsuit. (Exh. 3, FBI 302 of Interview of George Tannous, 6/20/07, at 4).

The defendant and his wife divorced in 2005. (PSR ¶ 62). Defendant and his ex-wife admitted to an acquaintance that they divorced on the advice of counsel in order to shield their assets from creditors (the victims in the Missouri litigation). (CR 38, Government's Submission of Report and Related Evidence for Hearing, exhibit 3 at 2). In addition, the acquaintance recounts discussions with defendant in 2008 in which defendant recalled details of his involvement in the fraud. (Id., exh. 3 at 3, exh. 4 at 1). All of these facts establish that defendant has exaggerated his memory loss for years in relation to the fraud involving Beeler and Tannous in order to avoid civil and criminal responsibility.

### 3. Defendant's Malingering

In the report of examination and observation of defendant for over 3 months, the staff at FMC Butner reports substantial evidence of defendant's malingering. First, in psychological testing for malingering behavior, defendant's "scores resembled the TBI At-Risk group and those who were instructed to simulate cognitive impairment." (See 8/6/10 Forensic Evaluation at 16). The staff at FMC Butner also monitored defendant's telephone calls which were "significant for the absence of confusion, disorientation or language deficits" as compared to the symptoms defendant displayed according to his own treating physicians. (Id. at 20). One of the recordings was played in open court at the January 11, 2011, competency hearing in this case. These

facts support the conclusion that defendant has tried to deceive his own treating medical professionals, independent medical staff performing examinations, and this Court in order to avoid accountability for his criminal conduct.

III. <u>DISCUSSION OF SENTENCING GUIDELINES CALCULATIONS</u>

    A.   <u>Guideline Calculations in the PSR</u>

The PSR reflects the following sentencing calculations:

| | | |
|---|---|---|
| Base Offense: Loss > $400,000 | 20 | [USSG § 2T4.1(H)]; |
| Income from criminal activity > $10,000 | +2 | [USSG § 2T1.1(b)(1)]; and |
| Acceptance of Responsibility: | -3 | [USSG § 3E1.1(a), (b)]. |
| **Total Offense Level:** | **19** | |

The PSR determined a Criminal History Category I, for a sentencing range of 30-37 months.

As set forth in the PSR, the plea agreement deviates from the above calculations in that the parties' stipulated to a taxable loss of less than $200,000, thereby resulting in a +16 under U.S.S.G. § 2T4.1(F), a total offense level of 15, for a sentencing range of 18 to 24 months in custody. For the reasons set forth in paragraph 28 of the PSR, and the terms of the plea agreement, the government submits that for the purposes of sentencing loss, not restitution, the tax loss in this case is approximately $138,320.

V. <u>ANALYSIS OF SECTION 3553(a) FACTORS</u>

After determination and consideration of the above-referenced calculations under the Sentencing Guidelines, the

Court must consider all of the 18 U.S.C. § 3553(a) factors in imposing sentence. See United States v. Gall, 128 S.Ct. 586, 596 (2007). Accordingly, in setting an appropriate sentence, the Court must consider:

A. <u>The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant</u>

The nature and circumstances of the instant offense conduct are serious and weigh heavily in favor of a term in custody. Defendant participated in a scheme to defraud investors out of millions of dollars. In addition, several aggravating factors that suggest a term of incarceration is necessary are present in this case. For example, defendant wrote and submitted a false and misleading letter to a United States District Judge in order to gain leniency for co-schemer Beeler in order to facilitate Beeler's continued role in the fraud.

In the civil litigation filed by his victim investors, defendant misled the United States District Court that heard the matter in effort to convince the jury and the Court that defendant had little to no recollection of the events underlying the lawsuit, all of which was belied by defendant's later conduct and admissions about his role in the scheme.

Finally, defendant tried to mislead this Court and the staff at FMC Butner about his memory loss, physical limitations, and language functioning in order to avoid responsibility for his crimes. These facts further evidence a defendant bent upon avoiding responsibility for his crimes.

The leading factors in mitigation with respect to defendant are his age and health issues. However, due to defendant's own

deception and malingering over the last few years, there can be no certainty about the true state of defendant's health and functionality.

### B. The Need for the Sentence Imposed to Reflect The Seriousness of the Offense, Promote Respect For the Law, Provide for Just Punishment, Deter Criminal Conduct, and Protect the Public

A sentence of 12 months is necessary because the extreme lengths to which this defendant has gone to avoid responsibility, including perjurious and obstructive deposition and trial testimony before a federal court, and efforts to mislead the instant Court into believing he was near catatonic, reflect a defendant with no remorse and no respect for the law notwithstanding his past experience as a United States Congressman and state legislator. The Probation Office conclusion that a term of probation is sufficient due to the age of the underlying fraudulent conduct, the relative simplicity of identifying the tax offense conduct, and defendant's age, gives too much credit to defendant's age and apparent medical circumstances, both of which are rebutted by defendant's own deceptive conduct during the course of the competency proceedings in this case. It is also important to recall that defendant was already well into his seventies when he committed the instant offense conduct and underlying investment fraud, a fact that calls into question whether defendant's age alone supports such a large downward variance and sentence of probation.

Finally, while defendant's age and health certainly must be taken into consideration, but for defendant's own delays and malingering in this case charged in January 2009, this case would

have been resolved (via trial or plea) and defendant likely could and would have completed any term in custody months, if not years, ago. A sentence of probation based primarily on defendant's age and claimed incapacity would, in effect, reward the deception and malingering defendant has engaged in over the last 3 years.

### C. The Need to Avoid Unwarranted Sentence Disparities

A sentence of probation, as advocated by the Probation Office, would amount to a substantial departure from the Guideline calculations in this case, that is 18-24 months as stipulated by the parties, and 30-37 months as calculated in the PSR.

### D. The Need to Provide Restitution to Victims

There is no indication that restitution to victims would be furthered, or hindered, by a term in custody as opposed to a sentence of probation.

## VI. CONCLUSION

The Court should adopt the government's sentencing analysis and determine a total offense level 15, criminal history Category I, for an advisory sentencing range of 18-24 months. In addition, the Court should take into account defendant's age and medical condition to sentence defendant to 12 months in custody, order payment of $138,320 of restitution to the IRS, $3,179,135 in stipulated restitution to his victim investors, and order defendant to pay a special assessment of $100.

## CERTIFICATE OF SERVICE

I, **YENI GOMEZ,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING POSITION; EXHIBITS**

**service was:**

[X] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[ ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By email as follows:

[ ] By federal express as follows:

Nancy O'Connor
U.S. Probation Office
Woodland Hills Branch
21041 Burbank Blvd., Suite 200
Woodland Hills, CA 91367-6606

This Certificate is executed on January 31, 2012 at Los Angeles, California.
I certify under penalty of perjury that the foregoing is true and correct.

_____
YENI GOMEZ